FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
DEC 23 2025
TAMMY H. DOWNS, CLERK
By:_____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

JANIE MCMASTERS, INDIVIDUALLY AND AS
PERSONAL REPRESENTATIVE OF THE ESTATE OF
STEPHEN KYLE MCMASTERS, DECEASED                    PLAINTIFF

VS.                    NO. 3:05-CV-293-DPM

CHRISTOPHER SHULL INDIVIDUALLY
AND IN HIS OFFICIAL CAPACITY
AS A POLICE OFFICER OF THE
CITY OF BAY, ARKANSAS
JOHN DOE INSURANCE COMPANIES 1-10; and
JOHN DOES 1-10                                      DEFENDANTS

## COMPLAINT

Plaintiff Janie McMaster, duly appointed Personal Representative of the
Estate of Stephen Kyle McMaster, Deceased, ("Plaintiff") appears and for her
complaint on behalf the Estate of Stephen Kyle McMaster, Deceased and all
beneficiaries of said Estate against defendant Christopher Shull in his individual
and official capacity as a Police Officer for the City of Bay, Arkansas,  John Does
Insurance Companies 1-10 and John Does 1-10, states as follows:

## JURISDICTION AND VENUE

1.    This federal action—based on the death of Stephen Kyle McMasters—
arises under the United States Constitution, particularly under the Fourth and
Fourteenth Amendments, and under law, the Civil Rights Act of 1871, 42 U.S.C. §

This case assigned to District Judge _____
and to Magistrate Judge _____

3529558-v1

1983 and Arkansas state law.  This Honorable Court has jurisdiction by virtue of 28 U.S.C. §§ 1331 and 1367.

2.    Venue is founded in this Court upon 28 U.S.C. § 1391 as the acts of which Plaintiff complains arose in this District.

**PARTIES**

3.    At all relevant times, Stephen Kyle McMasters ("McMasters") was a United States citizen and was, therefore, entitled to all legal and constitutional rights afforded U.S. citizens.  McMasters was 32 years old when he was killed in the City of Bay, Craighead County, Arkansas on October 21, 2023 during a police pursuit involving Shull, who was at the time a Police Officer employed by Bay Police Department ("Bay PD").

4.    McMasters was the husband of the plaintiff and was the father of three minor children, (KJM, KRM and JKM), the third of which was born after McMasters was killed.  Plaintiff and her children, as well as Stephen Kyle McMasters' parent (Rebecca McMasters) and brother (Derek McMasters) are beneficiaries of the Estate.

5.    On December 23, 2024, plaintiff was appointed the personal representative of the Estate of Stephen Kyle McMasters ("the Estate") by the Probate Court of Craighead County, Arkansas and issued Letters of Administration. *In the Estate of Stephen Kyle McMaster, Deceased*, 16JPR23-563.  A copy of the Probate Court's Order is attached hereto as Exhibit A.

6.    On October 21, 2023, the City of Bay, Arkansas was the employer of Christopher Shull ("Shull") as a member of the Bay City Police Department ("Bay

2

PD"). The Bay PD was charged with developing and enforcing policies for its officers to follow related to their duties as police officers, including policies related to use of force, the operation of police vehicles and pursuits using police vehicles.

7. At all relevant times, Shull was an individual residing in Craighead County, Arkansas.

8. On October 21, 2023, Shull was employed as a police officer by the Bay PD.

9. As a law enforcement officer, Shull had a duty to comply with the protections afforded by the United States Constitution. Specifically, Shull was not to use excessive force against individuals and was to follow all policies and training from the Bay PD.

10. On October 21, 2023, and at all relevant times, Shull was acting under the under the color of state law and within the scope of his employment with the Bay PD regarding the incident involving McMasters referenced herein.

11. John Doe Insurance Companies 1-10 are companies which provide insurance coverage to one or more of the defendants.

12. John Doe Defendants 1-10 are either municipal entities, employees of the Bay PD or the City of Bay involved in the creation, implementation, maintenance and training related to policies for Bay PD officers to follow related to their duties as police officers, including policies related to use of force, the operation of police vehicles and pursuits using police vehicles.

3

## FACTUAL ALLEGATIONS

13.    On October 21, 2023, at approximately 11:30 p.m., McMasters was driving a Utility Task Vehicle ("UTV"), commonly referred to as a "side-by-side," on a city street in Bay, Craighead County, Arkansas.  The UTV belonged to his mother-in-law and was being used with her permission.  He had left his home in Jonesboro and, travelling on farm roads, is believed to have been headed to his brother's house in Bay.

14.    While the use of a UTV on public roadways is now permissible by virtue of an act signed into law on April 21, 2025, in October 2023, driving a UTV on a public roadway subjected the operator to a misdemeanor with penalties limited to a fine of not less than ten dollars ($10.00) nor more than fifty dollars ($50.00) or imprisoned of not more than thirty (30) days.  Ark. Code Ann. § 27-21-104.

15.    As McMasters was operating the UTV, he was observed by Shull, then a police officer employed by the Bay PD, who was parked in an unmarked full-size Dodge Ram pick-up truck belonging to the Bay PD and/or the City of Bay, Arkansas.

16.    On October 21, 2023, at approximately 11:30 p.m., the streets of Bay were practically deserted.

17.    McMasters was at most subject to a limited misdemeanor citation for traveling on the streets of Bay in the UTV.

18.    Shull left his parked spot and pursued McMasters at a high rate of speed, frequently driving through residential yards, and rammed the rear of the UTV with the full-size Dodge Ram pick-up four (4) separate times.

4

19.    Three of Shull's ramming incidents occurred in the span of thirty-nine (39) seconds.

20.    On the fourth ramming incident, Shull was operating the full-size Dodge Ram pick-up at sixty-seven (67) mph, as confirmed by the pick-up's dash mounted camera.

21.    As shown in the dash camera video, Shull was overtaking McMasters' UTV when he intentionally steered the full-size Dodge Ram pick-up truck into the left rear of the UTV. This move is known as a "precision immobilization technique" or, more commonly, a PIT maneuver.

22.    Upon the impact by Shull's full-size Dodge Ram pick-up truck, the UTV was forced to the right where it exited the roadway and impacted a telephone/utility pole that was sheared off at the ground by the force of the impact.

23.    McMasters was ejected and, per the Arkansas State Crime Lab, sustained fatal Craniocerebral Injuries, which included:

- Multiple comminuted skull fractures.

- "Deep, pulverizing type lacerations" involving the base of the brain and "extensive lacerations" of the inferior right frontal lobe and the left temporal lobe.

- White matter hemorrhage in both frontal lobes, as well as hemorrhage in both basal ganglia and the thalamic nuclei, as well as multiple punctate hemorrhages in the pons and widespread soft tissue hemorrhage involving the

5

right frontal, temporal, parietal, and occipital scalp and diffuse subarachnoid hemorrhage involving the cerebral hemispheres and the cerebellum; and

- The basilar skull fracture was associated with widespread terminal blood aspiration, with heavy deposition of blood in the upper airways and both lungs.

24. During the pursuit, which culminated in the death of McMasters, Shull's communications over the Bay PD radio band were spastic and revealed that he was unable to report his location and, objectively, was out of control.

25. After performing the PIT maneuver which killed McMasters, Shull stood over McMasters' body, gun drawn, and was recorded making inconsistent and untrue statements.

26. In addition, when asked how he felt, Shull responded that he "felt great."

27. While at the scene, Shull was contacted by Chief Keith Milam ("Chief Milam") on the Bay PD police band radio, which was being recorded. Rather than converse with Shull in a format where the call would have been recorded, Chief Milam instructed Shull to call him on Chief Milam's cell phone, which was not recorded. Chief Milam and Shull took this action to prevent their conversation from being documented to conceal the content.

28. The Bay PD, in concert with other law enforcement agencies that responded to the scene of the crash, allowed McMasters' body to lay outside in a

6

ditch for hours without providing any protection for the body or transporting the body where it could be properly stored and preserved.

29.     Deputies from the Craighead County Sheriff's Office were notified of the pursuit by Shull of McMasters but were expressly directed to not participate in the pursuit by their patrol supervisor, Sgt. Holden Harrison.

30.     Deputies from the Craighead County Sheriff's Office arrived at the scene where McMasters was killed no more than 10 minutes after the PIT maneuver and systemically turned off their body microphones.  In the words of the Craighead County Patrol Supervisor Sgt Harrison, this is done so the officers can "speak freely."

31.     The evening of October 21, 2023, Shull either was not wearing a body camera or microphone, or never turned them on.

32.     On or about October 22, 2023, the Craighead County Sheriff's Office contacted the Arkansas State Police Criminal Investigation Division ("ASP/CID") and requested that the ASP/CID assume responsibility for the investigation of McMaster's death.

33.     A Special Investigator from the ASP/CID obtained a copy of the dash cam video from the full-size Dodge Ram pick-up Shull was driving on October 21, 2023.

34.     On or about October 23, 2023, the Special Investigator met with Shull at the Arkansas State Police Headquarters in Jonesboro to view the dash cam video and to interview Shull.  Shull, however, appeared with counsel who advised the

3529558-v1

ASP/CID Special Investigator that Shull would provide a written statement the next day.

35.    On October 24, 2023, Shull's attorney sent the ASP/CID Investigator a typed, five-page, single-spaced document purporting to be Shull's statement, even though it was not sworn or signed by Shull.

36.    Incredibly, the Bay PD subsequently adopted the multi-page document provided by Shull's counsel as the official narrative for the Bay PD Incident Report.

37.    The Bay PD never prepared a separate incident report.

38.    Prior to being hired by the Bay PD, Shull was employed as a patrol officer by the City of Jonesboro, Arkansas.  Based on his personnel file from the Jonesboro Police Department, from January 1, 2018 through May 20, 2022, Shull was disciplined three times for recklessly violating department policies regarding pursuits with law enforcement vehicles, as well as a violation for conduct unbecoming for cussing a minor student at a Jonesboro public school.

39.    Shull was eventually terminated from the Jonesboro Police Department on May 20, 2022 for lying to supervisors about posting a video on Instagram of a suspect which Shull had tasered and onto which Shull had dubbed the Metallica song *Ride the Lighting* and on which he had placed the caption "Can't Stop the Flop."

40.    Despite this history, Shull was hired by the Bay PD on January 11, 2023, and provided the use of a full-sized Dodge Ram pick-up without any supervision or remedial training.

8

3529558-v1

41. On November 1, 2023, Shull was purportedly cleared by the Bay PD of any wrongdoing related to the death of McMasters.

42. On November 3, 2023, just two days later, Shull was then terminated from the Bay PD.

## COUNT I

### SHULL'S EXCESSIVE USE OF FORCE IN VIOLATION OF THE FOURTH AMENDMENT

43. Plaintiff hereby restates and realleges all preceding paragraphs as if fully set forth again in this paragraph.

44. Shull, an agent of the State, was acting under the color of state law when he pursued McMasters on October 21, 2023.

45. Shull's conduct during the pursuit of McMasters, specifically the repeated ramming of the UTV with a full-size Dodge Ram pick-up, and the performance of a PIT maneuver on the UTV at sixty-seven (67) mph, which directly and proximately resulted in the death of McMasters, constituted unnecessary and objectively unreasonable and excessive force all in violation of McMaster's Fourth Amendment rights.

46. Shull's conduct likewise violated McMasters' right to due process as guaranteed by the Fourteenth Amendment.

47. Shull's long history of police misconduct demonstrated a substantial risk of future misconduct and a tendency to use excessive force against citizens.

48. Chief Milam and the Bay PD hired Shull despite his history and did not require training to ensure Shull would not be a threat to the citizens of Bay.

3529558-v1

49.    Shull is liable to Plaintiff in damages pursuant to 42 U.S.C. § 1983, including compensatory damages, costs, attorneys' fees and punitive damages.

## COUNT II

## DENIAL OF ACCESS TO COURTS

50.    Plaintiff hereby restates and realleges all preceding paragraphs as if fully set forth again in this paragraph.

51.    The First and Fourteenth Amendments protect the rights of individuals, such as Plaintiff, to seek redress for claims that have a reasonable basis in law and fact.  Efforts by state actors to impede an individual's access to courts or administrative agencies can provide the basis for a constitutional claim under 42 U.S.C. § 1983.

52.    Claims of the denial of access to the courts can be forward-looking or backward-looking.  Litigants in backward-looking denial of the constitutional right of access to the courts— such as alleged by Plaintiff herein—must allege that there are specific cases that cannot now be tried (or tried with all material evidence) as a result of a defendant's conduct, no matter what official action may be taken in the future.

53.    A cover-up by state actors that prevents a plaintiff from learning of a potential claim within the statute of limitations represents substantial prejudice and is actionable.

54.    As described above, Shull intentionally carried on a conversation with Bay PD Chief Milam immediately after the death of McMasters and took deliberate

10

actions to prevent their conversation from being recorded in an effort to conceal the admissions.

55. Further, Shull failed to preserve evidence at the scene. The reports prepared by the various law enforcement agencies at the scene noted alleged open beer containers. However, of all of the photographs taken at the scene, none show an open beer container. Further, no such mysterious open containers were retained as evidence.

56. Officers and officials at the scene failed to create and retain all audio and video.

57. McMasters is unable to provide an account of what happened on October 21, 2023, and Plaintiff was not present at the time of McMasters' death.

58. Plaintiff relied upon Shull and other officials on the scene to use his mandated duty to determine if criminal or civil prosecutions were available to Plaintiff.

59. By reason of the conduct of at least Chief Milam and Shull, Plaintiff is deprived of rights, privileges and immunities guaranteed to her and her minor children and family by the First and Fourteenth Amendments to the United States Constitution, and laws enacted thereunder.

60. The acts of Shull were unnecessary, objectively unreasonable and malicious and, therefore, they are liable to Plaintiff in damages pursuant to 42 U.S.C. § 1983, including compensatory damages, costs, attorneys' fees and punitive damages.

11

61. The actions of Shull violated the constitutional right of McMasters as described herein. Accordingly, plaintiff is entitled to all actual damages suffered by McMasters to the extent available under controlling law.

62. The actions of Shull violated the constitutional right of McMasters as described herein were taken when Shull knew or should have known in light of the surrounding circumstances that his conduct would naturally and probably result in injury and damage to McMasters and that he continued such conduct intentionally or with malice or in reckless disregard of the consequences from which malice may be inferred. Accordingly, plaintiff is entitled to punitive damages.

63. Plaintiff also seeks attorneys' fees and cost as permitted under 42 U.S.C. § 1983.

64. Plaintiff demands a trial by jury.

65. Plaintiff also seeks all other just and equitable relief which this Court finds that she is entitled.

WHEREFORE, PREMISES CONSIDERED, plaintiff Janie McMaster, duly appointed Personal Representative of the Estate of Stephen Kyle McMaster, Deceased, prays for judgment in an amount to fairly and fully compensate for the damages alleged herein; and further prays for any and all other relief to which she

12

3529558-v1

may be entitled including an award of punitive damages, attorneys' fees and costs.

WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Ave.
Suite 2300
Little Rock, Arkansas 72201
Phone: (501) 371-0808
Email:  jhenry@wlj.com
jsallings@wlj.com
kwilson@wlj.com

By:_____

Judy Simmons Henry (84069)
Jerry J. Sallings (84134)
Kyle R. Wilson (89118)

*Attorneys for Plaintiff Janie McMasters,*
*Individually and as Personal Representative*
*of the Estate of Stephen Kyle McMasters*

AND

Jeannette A. Robertson (84131)
ROBERTSON LAW FIRM
408 W. Jefferson, Suite A
Jonesboro, Arkansas 72401
Phone: (870) 932-6606
Email: rlf@robertsonlawfirm.biz

*Attorneys for Plaintiff*
*Janie McMasters, Individually and as*
*Personal Representative of the*
*Estate of Stephen Kyle McMasters*

13

3529558-v1